UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH LEE GILMORE,

          Petitioner,               CASE NO. 2:19-cv-10631

v.

                                PAUL D. BORMAN
SCOTT SPRADER,           UNITED STATES DISTRICT JUDGE

          Respondent.

_____/

## OPINION AND ORDER DENYING THE HABEAS CORPUS PETITION, DECLINING TO ISSUE A CERTIFICATE OF APPEALABILITY, AND GRANTING PERMISSION TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

Petitioner Joseph Lee Gilmore filed a *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. The petition challenges Gilmore's Michigan convictions for armed robbery, Mich. Comp. Laws § 750.529, first-degree home invasion, Mich. Comp. Laws § 750.110a(2), unlawful imprisonment, Mich. Comp. Laws § 750.349b, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and felony firearm, second offense, Mich. Comp. Laws § 750.227b. *See* Pet. (ECF No. 1, PgID 1). Gilmore raises four claims about the prosecuting attorney's conduct, his trial and appellate attorneys, and the state trial court's denial of a one-day adjournment of the trial. Respondent Scott Sprader has asked the Court to deny the petition. *See* Answer in Opp'n to Pet. (ECF No. 9).

Having reviewed the pleadings and record, the Court agrees with Respondent that Gilmore's claims do not warrant habeas corpus relief. The Court, therefore, will deny the habeas petition and decline to issue a certificate of appealability. The Court, nevertheless, will allow Gilmore to appeal this decision *in forma pauperis* because he was granted pauper status in this Court, and an appeal could be taken in good faith.

## I. Background

### A. The Charges, Trial, and Sentence

Gilmore initially was charged in Wayne County, Michigan with two counts of armed robbery, one count of first-degree home invasion, three counts of unlawful imprisonment, one count of felon in possession of a firearm, one count of felony firearm, second offense, and one count of witness intimidation. He was tried before a jury in Wayne County Circuit Court. His first trial ended in a mistrial because the jury was unable to reach a consensus on the first eight counts, and it found Gilmore not guilty of the witness-intimidation count. *See* 5/16/13 Trial Tr. (ECF No. 10-14, PgID 434–39). The prosecutor then retried Gilmore on the first eight counts, and at the second trial,

> the victims, Frank Graham and Italiya Anderson, identified defendant
> as one of the perpetrators. Although Graham never visibly observed
> defendant in the home during the robbery, Graham stated that he
> recognized defendant's voice based on previous conversations that he
> had with defendant during the three or four years that he had known
> him through their landlord-tenant relationship. In response to a

2

question from the jury, Graham confirmed that he was "one hundred percent sure that it was [defendant's] voice" that he heard because he had talked to him "plenty of times."  Anderson, who had known defendant for eight or nine years, testified that she saw defendant in the house during the incident, specifically noticing his Cartier glasses and light skin.  She also recognized defendant's voice when he spoke with the other perpetrators, asked Anderson where the money was located in the house, and instructed one of the perpetrators to check on a dog in the basement.  Further, Graham testified that defendant threatened him by phone while defendant was in prison, and he identified defendant's voice on the recording of the phone call, which was admitted at trial.

*People v. Gilmore*, No. 318592, 2015 WL 558292, at *2 (Mich. Ct. App. Feb. 10, 2015).  On August 23, 2013, the jury found Gilmore guilty of the eight counts against him.  *See* 8/23/13 Trial Tr. at pp. 4–5 (ECF No. 10-20, PgID 1057–58).

The trial court sentenced Gilmore as follows:  270 to 750 months in prison for each robbery conviction; 110 to 240 months for the home-invasion conviction; 70 to 180 months for each unlawful-imprisonment conviction; 30 to 60 months for the felon-in-possession conviction; and 5 years for the felony-firearm conviction.  *See Gilmore*, 2015 WL 558292, at *1.  The court ordered the sentences for counts one through seven to run concurrently with each other and consecutively to the sentence for the eighth count.  *See* Judgment of Sentence (ECF No. 10-26, PgID 1460).

## B.  The Direct Appeal

In an appeal of right, Gilmore argued through counsel that the trial court erred by denying his request for a one-day adjournment to present exculpatory witnesses

3

and that the jury's verdict was based on insufficient evidence in violation of his right to due process.  *See* Appellant's Brief (ECF No. 10-26, PgID 1475–76).  In a *pro se* supplemental brief, Gilmore raised the same two issues and four additional claims about the trial court's failure to re-read testimony to the jury, his trial counsel's performance, the prosecutor's conduct, and the trial court's scoring of the sentencing guidelines*.  See* Appellant's Pro Per Supplemental Brief (ECF No. 10-26, PgID 1522–23, 1528–31, 1620).  The Michigan Court of Appeals affirmed Gilmore's convictions and sentences in an unpublished, per curiam opinion. *See Gilmore*, 2015 WL 558292.

Gilmore raised the same issues and a new claim about his appellate attorney in an application for leave to appeal in the Michigan Supreme Court.  On December 23, 2015, the Michigan Supreme Court denied leave to appeal because it was not persuaded to review the questions presented to the court.  *See People v. Gilmore*, 498 Mich. 957 (2015).

## C.  The First Habeas Petition and Gilmore's Motion for Relief from Judgment

In 2016, Gilmore filed a federal habeas corpus petition that was dismissed without prejudice after Gilmore filed a motion for relief from judgment in the state trial court.  *See Gilmore v. Burton*, No. 16-cv-14512 (E.D. Mich. May 15, 2017).  Gilmore's state-court motion for relief from judgment raised several issues about his trial and appellate attorneys. The trial court denied the motion on grounds that

Gilmore's claims about trial counsel were barred by the principle of *res judicata* and that Gilmore was not prejudiced by appellate counsel's failure to (i) file a motion for new trial, (ii) petition the court for an evidentiary hearing, or (iii) raise any of the issues set forth in his motion. *See People v. Gilmore*, No. 12-004304-01-FH (Wayne Cnty. Cir. Ct. Aug. 9, 2017); ECF No. 10-21.

Gilmore appealed the trial court's decision without success. The Michigan Court of Appeals denied leave to appeal because Gilmore had failed to establish that the trial court erred in denying his motion for relief from judgment. *See People v. Gilmore*, No. 342318 (Mich. Ct. App. Apr. 26, 2018); ECF No. 10-23, PgID 1156. On December 4, 2018, the Michigan Supreme Court denied leave to appeal because Gilmore had failed to establish entitlement to relief under Michigan Court Rule 6.508(D). *See People v. Gilmore*, 503 Mich. 914 (2018).

## D. The Current Petition, Answer in Opposition, and Reply

In 2019, Gilmore commenced this case. The grounds for relief set forth in his habeas petition allege that: (1) the prosecutor violated his right to due process by using and failing to correct perjured testimony and by destroying and failing to preserve evidence; (2) trial counsel provided ineffective assistance by failing to (a) interview and compel the attendance of two key defense witnesses, (b) review phone calls for evidence of motive, and (c) contact and procure the attendance of witnesses that she promised to produce at trial; (3) appellate counsel was ineffective for failing

to move for an evidentiary hearing to preserve claims about trial counsel and for failing to raise meritorious issues that were stronger than the issues which counsel raised; and (4) the trial court abused its discretion by denying Gilmore's request for a one-day adjournment to procure the attendance of key defense witnesses. *See* Pet. (ECF No. 1, PgID 5, 7–8, 10, 15).

Respondent argues in his answer to the petition that: Gilmore's prosecutorial-misconduct claims are procedurally defaulted and meritless; one of Gilmore's subclaims about trial counsel is procedurally defaulted and all the subclaims about trial counsel lack merit; the claims about appellate counsel lack merit; and the fourth claim regarding the denial of an adjournment is not cognizable on habeas review and lacks merit. *See* Answer in Opp'n to Pet. (ECF No. 9, PgID 176–78). In a reply brief, Gilmore disagrees with Respondent's arguments and maintains that none of his claims are procedurally defaulted. *See* Petitioner's Brief in Reply to Respondent's Answer (ECF No. 12).

## II.   Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires prisoners who challenge "a matter 'adjudicated on the merits in State court' to show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the

State court proceeding.'" *Wilson v. Sellers*, 138 S. Ct. 1188, 1191 (2018) (quoting 28 U.S.C. § 2254(d)).   Simply stated, "[f]ederal habeas courts must defer to reasonable state-court decisions." *Dunn v. Reeves*, 141 S. Ct. 2405, 2407 (2021). This is a "highly deferential standard," which "demands that state-court decisions be given the benefit of the doubt."  *Renico v. Lett*, 559 U.S. 766, 773 (2010) (quoting *Lindh v. Murphy,* 521 U.S. 320, 333 n.7 (1997), and *Woodford v. Visciotti,* 537 U.S. 19, 24 (2002) (*per curiam*)).

 "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).   "Only an 'objectively unreasonable' mistake, . . .  one 'so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement,' slips through the needle's eye of § 2254." *Saulsberry v. Lee*, 937 F.3d 644, 648 (6th Cir. 2019) (quoting *White v. Woodall*, 572 U.S. 415, 419 (2014), then *Richter*, 562 U.S. at 103).   "That's a 'high bar' to relief, which 'is intentionally difficult to meet.'"  *Kendrick v. Parris,* 989 F.3d 459, 469 (6th Cir.) (quoting *Woods v. Donald*, 575 U.S. 312, 316 (2015)), *cert. denied*, 142 S. Ct. 483 (2021).

## III.  Discussion

### A.  The Prosecutor

Gilmore alleges that the prosecutor violated his Fourteenth Amendment right to due process of law by using, and failing to correct, perjured testimony by the complainants, and by suppressing and failing to disclose evidence.

#### 1.  Procedural Default

The Michigan Court of Appeals reviewed Gilmore's prosecutorial-misconduct claims for "plain error" because Gilmore did not preserve the claims for appellate review by objecting at trial to any of the alleged instances of prosecutorial misconduct.  *See Gilmore*, 2015 WL 558292, at *5.  Respondent, therefore, argues that Gilmore's prosecutorial-misconduct claims are procedurally defaulted.

In the habeas context, a procedural default is "a critical failure to comply with state procedural law."  *Trest v. Cain*, 522 U.S. 87, 89 (1997).  "A habeas petitioner procedurally defaults a claim when '(1) [he] fails to comply with a state procedural rule; (2) the state courts enforce the rule; [and] (3) the state procedural rule is an adequate and independent state ground for denying review of a federal constitutional claim.'"  *Theriot v. Vashaw*, 982 F.3d 999, 1003 (6th Cir. 2020) (quoting *Wheeler v. Simpson*, 852 F.3d 509, 514 (6th Cir. 2017) (quoting *Guilmette v. Howes*, 624 F.3d 286, 290 (6th Cir. 2010) (*en banc*))), *cert. denied*, 142 S. Ct. 482 (2021).

To preserve an issue for appellate review in Michigan, a defendant must first raise the issue in the trial court, unless compelling or extraordinary circumstances exist. *People v. Cain*, 498 Mich. 108, 114 (2015) (citing *People v. Grant,* 445 Mich. 535, 546 (1994)).  "In cases alleging prosecutorial misconduct, issues are 'preserved by contemporaneous objections and requests for curative instructions . . . .'" *People v. Evans*, 335 Mich. App. 76, 88 (2020) (quoting *People v. Mullins*, 322 Mich. App. 151, 172 (2017)).  The objection must be timely and specific, *People v. Clark*, 330 Mich. App. 392, 433 (2019), *leave to appeal denied*, 506 Mich. 917 (2020), and "an objection on one ground is insufficient to preserve an appellate argument based on a different ground," *People v. Danto*, 294 Mich. App. 596, 605 (2011) (citing *People v. Bulmer*, 256 Mich. App. 33, 35 (2003)).

Gilmore violated Michigan's contemporaneous-objection rule by failing to object at trial to the prosecutor's alleged use of, and failure to correct, perjury.  He also failed to make a contemporaneous objection to the prosecution's alleged failure to collect, preserve, and disclose evidence.  Although trial counsel claimed that recordings of the complainants' 911 emergency phone calls to the police were *Brady* material, she made that comment during a hearing on the admissibility of the related 911 call logs, and she described the issue as a "spoilage problem."  *See* 8/21/13 Trial Tr. at p. 95 (ECF No. 10-18, PgID 943).

Rather than seeking a mistrial or some other remedy for the prosecutor's alleged violation of Gilmore's constitutional right to due process, trial counsel used the prosecution's alleged failure to collect, preserve, and disclose evidence as part of Gilmore's defense.  In her closing argument, she described the prosecution's presentation of the case as shameful and sloppy, and she stated that the police had hidden and destroyed evidence, ignored their responsibility to provide information, and conducted an "abdominal investigation." *See id*. at pp. 140–56, PgID 988–1004.

The Court concludes that Gilmore failed to make a contemporaneous objection to the alleged prosecutorial misconduct.  He did not object at trial to the alleged perjury, and he used the alleged failure to collect, disclose, and preserve evidence to his advantage instead of objecting to it.  The first procedural-default factor is satisfied.

The second factor also is satisfied because the Michigan Court of Appeals enforced the contemporaneous-objection rule by reviewing Gilmore's prosecutorial-misconduct claim for "plain error affecting substantial rights."  *Gilmore*, 2015 WL 558292, at *5.  A state court's "plain error" review is an impediment to review on the merits and constitutes enforcement of a procedural rule.  *Gibbs v. Huss*, 12 F.4th 544, 550 (6th Cir. 2021)  (citing *Williams v. Burt*, 949 F.3d 966, 973 (6th Cir.), *cert. denied*, 141 S. Ct. 276 (2020)); *accord Theriot*, 982 F.3d at 1004 (stating that "a state appellate court's review for plain error is enforcement of a procedural rule");

*Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001) ("[W]e view a state appellate court's review for plain error as the enforcement of a procedural default.").

Finally, "Michigan's contemporaneous-objection rule 'constitutes an adequate and independent state ground for foreclosing federal review.'" *Theriot*, 982 F.3d at 1004 (citing *Taylor v. McKee*, 649 F.3d 446, 451 (6th Cir. 2011)). Thus, the third and final procedural-default factor also is satisfied.

## 2. Cause and Prejudice; Miscarriage of Justice

Having determined that Gilmore procedurally defaulted his prosecutorial-misconduct claims, the Court considers whether Gilmore has shown some basis for excusing his procedural default. "A state prisoner may overcome the prohibition on reviewing procedurally defaulted claims if he can show 'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'" *Davila v. Davis*, 137 S. Ct. 2058, 2064–65 (2017) (quoting *Wainwright v. Sykes,* 433 U.S. 72, 84 (1977)).

Gilmore has not alleged "cause and prejudice" for his procedural default. In fact, he maintains that there was no procedural default. *See* Petitioner's Brief in Reply to Respondent's Answer (ECF No. 12, PgID 1958).[1] He has "abandoned any argument regarding cause and prejudice." *Wheeler*, 852 F.3d at 515.

---

[1] According to Gilmore, the Michigan Court of Appeals addressed his claims on the merits instead of relying on a state procedural bar. The Court of Appeals did

In the absence of "cause and prejudice," a habeas petitioner may pursue procedurally defaulted claims if he can "demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). "A fundamental miscarriage of justice results from the conviction of one who is 'actually innocent.'" *Lundgren v. Mitchell*, 440 F.3d 754, 764 (6th Cir. 2006) (citing *Murray v. Carrier*, 477 U.S. 478, 496 (1986)). "To be credible, [a claim of actual innocence] requires [the] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).

---

discuss the merits of Gilmore's claim as part of its "plain error" review. But the court's alternative holding does not require this Court to disregard the state court's finding that Petitioner's claim was procedurally barred. *Coe v. Bell*, 161 F.3d 320, 330 (6th Cir. 1998). As explained in *Harris v. Reed*, 489 U.S. 255 (1989),

> a state court need not fear reaching the merits of a federal claim in an *alternative* holding. By its very definition, the adequate and independent state ground doctrine requires the federal court to honor a state holding that is a sufficient basis for the state court's judgment, even when the state court also relies on federal law. See *Fox Film Corp. v. Muller*, 296 U.S. 207, 210, 56 S. Ct. 183, 184, 80 L. Ed. 158 (1935). Thus, by applying this doctrine to habeas cases, *Sykes* curtails reconsideration of the federal issue on federal habeas as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision. In this way, a state court may reach a federal question without sacrificing its interests in finality, federalism, and comity.

*Id*. at 264 n.10 (emphasis in original).

12

Gilmore has not presented the Court with any new and reliable evidence of actual innocence. Therefore, a fundamental miscarriage of justice would not result if the Court failed to adjudicate the substantive merits of Gilmore's prosecutorial-misconduct claims. Those claims are procedurally defaulted.

### 3. The Merits of the Prosecutorial-Misconduct Claims

The Court has determined for the following reasons that Gilmore's claims lack merit in addition to being procedurally defaulted.

#### a. Perjury

Gilmore alleges that the prosecutor used, and failed to correct, perjured testimony by the complainants. According to Gilmore, Graham testified falsely when he stated that he saw Gilmore during the criminal incident, and Anderson testified falsely when she said that she identified Gilmore during two phone calls to the police and during her conversation with officers at the crime scene.

To support his claim that the two complainants perjured themselves, Gilmore relies on:  a police report, which allegedly states that the suspects were unknown; Officer Marcie Passalacqua's testimony at Gilmore's first trial that neither complainant identified Gilmore as a suspect when she interviewed them at the crime scene; a 911 call log, which contained no names of the suspects or any identification of Gilmore; and Graham's initial testimony that he could identify Gilmore only by voice because the suspects placed a sheet over his head.

13

Prosecutors "may not knowingly present false evidence." *United States v. Fields*, 763 F.3d 443, 462 (6th Cir. 2014) (citing *Miller v. Pate,* 386 U.S. 1 (1967)). The Supreme Court has made clear that "deliberate deception of a court and jurors by the presentation of known false evidence is incompatible with 'rudimentary demands of justice.'" *Giglio v. United States*, 405 U.S. 150, 153 (1972) (quoting *Mooney v. Holohan*, 294 U.S. 103, 112 (1935)). "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But "[t]o prove that the prosecutor's failure to correct false testimony violated due process rights, a petitioner must demonstrate that: (1) the statement was actually false; (2) the statement was material; and (3) the prosecution knew it was false." *Rosencrantz v. Lafler*, 568 F.3d 577, 583–84 (6th Cir. 2009); *see also Amos v. Renico*, 683 F.3d 720, 728 (6th Cir. 2012). Petitioner must demonstrate that the testimony in question was "indisputably false" and that the alleged perjury was not harmless error. *Monea v. United States*, 914 F.3d 414, 421 (6th Cir. 2019).

Graham initially testified on direct examination that he recognized Gilmore's voice, but that he did not see Gilmore during the criminal incident because the suspects placed a sheet over his head. *See* 8/19/13 Trial Tr. at pp. 177-78, 184 (ECF No. 10-16, PgID 626-27, 633). On the following day, Graham testified in response to a juror's question that Gilmore had entered the house with an AK-47 rifle. *See*

14

8/20/13 Trial Tr. at p. 85 (ECF No. 10-17, PgID 734).  The latter testimony suggests that Graham not only heard Gilmore's voice during the incident, but that he also saw Gilmore.  However, Graham may have been confused at trial, and "just as in the case of mere inconsistencies between government witnesses, mere inconsistent statements by the same witness are insufficient to establish indisputable falsity." *Macon v. Davis*, 450 F. App'x 491, 493 (6th Cir. 2011) (citing *Rosencrantz,* 568 F.3d at 585–87, and *Coe,* 161 F.3d at 343).

Gilmore alleges that Anderson gave false testimony when she testified that she identified Gilmore during two phone calls to the police and during her conversation with a police officer who responded to the crime scene.  Officer Passalacqua's prior testimony, which was read into the record at Gilmore's second trial, established that neither complainant identified Gilmore by name when Passalacqua spoke with them.  But that does not necessarily mean Anderson lied at trial when she testified to the contrary.  She may have forgotten some of the details of her encounter with Passalacqua.  In fact, when Anderson was asked about the telephone calls that she made to the police on the day of the crime, she admitted at one point during trial that she was unsure whether she had mentioned Gilmore by name during one of the calls.  *See* 8/20/13 Trial Tr. at pp. 116-17 (ECF No. 10-17, PgID 765–66).

Gilmore has failed to show that the complainants' inconsistent testimony on some facts was indisputably false. Further, the inconsistencies were harmless, given the complainants' lengthy acquaintance with Gilmore and their ability to recognize Gilmore by his voice or face or both his voice and face.

### b. Failure to Collect, Preserve, and Disclose Evidence

Gilmore's second prosecutorial-misconduct claim alleges that the prosecution failed to collect, disclose, and preserve evidence favorable to the defense. He seems to be saying that the police intentionally destroyed recordings of the complainants' 911 emergency calls to the police, suppressed the officers' handwritten or typed logs summarizing the 911 calls, and failed to collect evidence, such as fingerprints and the extension cord and sheet used during the crimes.

Gilmore alleges that the 911 recordings were exculpatory because he could have used them to impeach Anderson and show that she did not identify him during the calls. Gilmore also seems to think that any fingerprints and physical evidence collected at the crime scene would have eliminated him as a suspect.

Gilmore's claim implicates the Supreme Court's decisions in *Brady v. Maryland*, 373 U.S. 83 (1963), *California v. Trombetta*, 467 U.S. 479 (1984), and *Arizona v. Youngblood*, 488 U.S. 51, 57 (1988). In *Brady*, the Supreme Court held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material, either to guilt or to

punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87.  A true *Brady* claim has three components: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." *Strickler v. Greene*, 527 U.S. 263, 281–82 (1999).

In *Trombetta*, the Supreme Court considered whether the Constitution imposes an affirmative duty on the States to preserve evidence on behalf of criminal defendants. The evidence in question there was breath samples and the result of breath-analysis tests.  The Supreme Court concluded that the Due Process Clause of the Fourteenth Amendment does not require law enforcement agencies to preserve breath samples in order to introduce the results of breath-analysis tests at trial. *Trombetta*, 467 U.S. at 491.  In reaching that conclusion, the Court stated that,

> [w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense.  To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means.

*Id*. at 488–89 (footnote and internal citation omitted).

Lastly, in *Youngblood*, the Supreme Court noted that "[t]he Due Process Clause of the Fourteenth Amendment, as interpreted in Brady, makes the good or

bad faith of the State irrelevant when the State fails to disclose to the defendant material exculpatory evidence." *Youngblood*, 488 U.S. at 57. The Supreme Court went on to say that the Due Process Clause requires a different result when the State fails "to preserve evidentiary material of which no more can be said than that it could have been subjected to tests, the results of which might have exonerated the defendant." *Id*. The Court stated that, "unless a criminal defendant can show bad faith on the part of the police, failure to preserve potentially useful evidence does not constitute a denial of due process of law." *Id*. at 58.

It was undisputed at Gilmore's trial that the police destroyed the 911 recordings of the complainants' emergency 911 calls to the police. However, Gilmore merely speculates that the recordings would have revealed that the complainants did not identify him as a suspect in the calls. His bare assertion that the recordings contained exculpatory evidence is not enough to prove a *Brady* violation. *See United States v. Stark*, 758 F. App'x 518, 520 (6th Cir. 2019).

Furthermore, Sergeant Raymond Evans testified that the recordings were destroyed pursuant to the police department's standard practice of saving recordings for only ninety days due to the high volume of such calls. *See* 8/20/13 Trial Tr. at p. 155 (ECF No. 10-17, PgID 804). The police apparently "were acting in good faith and in accord with their normal practice." *Trombetta*, 467 U.S. at 488 (quoting *Killian v. United States*, 368 U.S. 231, 242 (1961)). As in *Trombetta*, "[t]he record

18

contains no allegation of official animus towards [Gilmore] or of a conscious effort to suppress exculpatory evidence." *Id*.

Even if the recordings contained exculpatory value, their exculpatory value would not have been apparent before their destruction because Gilmore was not arrested until April 2012, which was *after* the recordings were destroyed.  *See* 8/20/13 Trial Tr. at p. 155 (ECF No. 10-17, PgID 804).  Gilmore, therefore, has failed to establish that the police violated his constitutional rights by not preserving the 911 recordings.

As for the logs which summarized the 911 calls and apparently were not disclosed to the defense, trial counsel indicated during trial that she or another defense attorney had subpoenaed and obtained the logs before trial.  *See* 8/20/13 Trial Tr. at p. 166 (ECF No. 10-17, PgID 815); 8/21/13 Trial Tr. at pp. 146–47 (ECF No. 10-18, PgID 994–95).  "No *Brady* violation exists where a defendant 'knew or should have known the essential facts permitting him to take advantage of any exculpatory information,' *United States v. Grossman,* 843 F.2d 78, 85 (2nd Cir. 1988), *cert. denied,* 488 U.S. 1040, 109 S. Ct. 864, 102 L.Ed.2d 988 (1989), or where the evidence is available to defendant from another source, *United States v. Davis,* 787 F.2d 1501, 1505 (11th Cir.) *cert. denied sub nom. Lowe v. U.S.,* 479 U.S. 852, 107 S.Ct. 184, 93 L.Ed.2d 118 (1986)."  *United States v. Clark*, 928 F.2d 733, 738 (6th Cir. 1991).

Finally, although Gilmore contends the police should have collected fingerprints and physical evidence at the crime scene, the Due Process Clause of the Fourteenth Amendment does not require the police to use a particular investigatory tool. *Youngblood*, 488 U.S. at 58–59. Nor does the prosecution have a constitutional duty to discover evidence that might conceivably aid the defense in the preparation of its case. *Williams v. Wolff*, 473 F.2d 1049, 1054 (8th Cir. 1973).

For the reasons stated above, Gilmore's prosecutorial-misconduct claims lack substantive merit in addition to being procedurally defaulted. He has no right to habeas relief on his first claim.

## B. Trial Counsel

The second habeas claim alleges that trial counsel's errors deprived Gilmore of a fair trial and his Sixth Amendment right to effective assistance of counsel. Gilmore states that trial counsel (1) failed to interview and compel the attendance of two key defense witnesses before trial, (2) failed to review the recording of a phone call before trial, and (3) promised the jury during opening statements that she would present witnesses, but subsequently failed to produce the witnesses. The Michigan Court of Appeals reviewed the first two subclaims on direct review and concluded that Gilmore was not deprived of effective assistance.

Gilmore raised his third subclaim about trial counsel for the first time in his motion for relief from judgment. Respondent argues that the third subclaim is

20

procedurally defaulted because, according to him, the state trial court rejected the claim under Michigan Court Rule 6.508(D)(3), which ordinarily prohibits a state court from granting relief from judgment if the defendant could have raised, but failed to raise, his or her claim on appeal. The state trial court, however, did not clearly and unambiguously state that it was rejecting Gilmore's third subclaim under Rule 6.508(D)(3). Therefore, Gilmore's third subclaim is not procedurally defaulted. The Court proceeds to address all three subclaims on their merits.

### 1. Clearly Established Federal Law

To prevail on his claims about trial counsel, Gilmore must show that "counsel's performance was deficient," and that "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. The defendant must show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. at 687.

The prejudice prong of the *Strickland* test "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* The defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. "This does not require a showing that counsel's actions 'more

likely than not altered the outcome,'" but "[t]he likelihood of a different result must

be substantial, not just conceivable." *Richter*, 562 U.S. at 111–12 (quoting

*Strickland*, 466 U.S. at 693).  In a habeas case, review of an ineffective-assistance-

of-counsel claim

> is "doubly deferential," *Cullen v. Pinholster*,  563 U.S. 170, 190, 131
> S.Ct. 1388, 179 L.Ed.2d 557 (2011), because counsel is "strongly
> presumed to have rendered adequate assistance and made all significant
> decisions in the exercise of reasonable professional judgment," *Burt v.
> Titlow*, 571 U.S. ——, ——, 134 S.Ct. 10, 17, 187 L.Ed.2d 348 (2013)
> (quoting *Strickland v. Washington,* 466 U.S. 668, 690, 104 S.Ct. 2052,
> 80 L.Ed.2d 674 (1984); internal quotation marks omitted).  In such
> circumstances, federal courts are to afford "both the state court and the
> defense attorney the benefit of the doubt." *Burt, supra*, supra, at ——,
> 134 S.Ct., at 13.

*Woods v. Etherton*, 578 U.S. 113, 117 (2016) (*per curiam*); *see also Cunningham v.

Shoop*, 23 F.4th 636, 671(6th Cir. 2022) (stating that, when assessing a state court's

decision on a petitioner's ineffective-assistance-of-counsel claim, a habeas court

must apply "the harsh standards of AEDPA," as elaborated by the Supreme Court in

*Richter*).  "[T]he question is . . . whether there is any reasonable argument that

counsel satisfied *Strickland*'s deferential standard." *Richter*, 562 U.S. at 105.

## 2. Application of the Law

### a. Failure to Interview and Subpoena Witnesses

Gilmore alleges that trial counsel deprived him of effective assistance and the

right to present a defense by failing to interview and subpoena police officers Marcie

Passalacqua and Gilda Mason.  Gilmore argues that the two officers were key

witnesses for the defense because they would have contradicted the complainants' testimony that they identified the suspects to the officers at the scene of the crime. The Michigan Court of Appeals determined that defense counsel's failure to interview and subpoena the two officers fell below an objective standard of reasonableness, but that Gilmore was not prejudiced by counsel's failure to call the witnesses.

"Federal courts may not disturb the judgments of state courts unless '*each* ground supporting the state court decision is examined and found to be unreasonable.'" *Shinn v. Kayer*, 141 S. Ct. 517, 524 (2020) (quoting *Wetzel v. Lambert*, 565 U.S. 520, 525 (2012) (*per curiam*)) (emphasis in original). Thus, if a fairminded jurist could agree with the state appellate court's prejudice holding, the reasonableness of its deficient-performance holding is "beside the point." *See id.* (quoting *Lambert,* 565 U.S. at 524). The Court, therefore, proceeds to determine whether trial counsel's failure to interview and subpoena Officers Passalacqua and Mason prejudiced Gilmore's defense and whether the state appellate court's finding of no prejudice was an unreasonable application of clearly established federal law.

Although neither Passalacqua nor Mason testified for the defense, Passalaqua's testimony from Gilmore's first trial was read into the record at his second trial. *See* 8/21/13 Trial Tr. at pp. 109–20 (ECF No. 10-18, PgID 957–68). And she testified that, when she interviewed the complainants, neither one of them

identified Gilmore as a perpetrator of the crimes. *See id*. at p. 111, PgID 959. Passalacqua also indicated in her report that all the suspects were unknown. *Id*. at p. 114, PgID 962. Therefore, Gilmore was able to establish his defense, despite counsel's failure to interview and subpoena the officers before trial, and the state appellate court's no-prejudice holding was not an unreasonable application of *Strickland*. Gilmore's claim fails.

### b. Failure to Investigate and Review Motive Evidence

Gilmore alleges next that trial counsel failed to review a recording of a phone conversation that he and Graham had while Gilmore was incarcerated. During the call, the two men apparently argued about a security deposit that Gilmore had paid to Graham and that Graham did not return after Gilmore moved out of the rental unit.

After a portion of the recording was played for the jury to establish a motive for the crimes, Graham identified his cell phone number and Gilmore's voice in the recording. *See* 8/19/13 Trial Tr. at pp. 187 (ECF No. 10-16, PgID 636). During a break in the proceeding, trial counsel asked to listen to the recording because she "hadn't had an opportunity to listen to [it]." *Id*. at pp. 189–90, PgID 638–39. The recording was then played for her, and her only request was that no additional jailhouse conversations be provided to the jury. *Id*. at p. 190, PgID 639. Following the break, the jurors returned to the courtroom, and the recording was played for

them.  Graham then identified his and Gilmore's voices on the recording.  *See id*. at pp. 195–96, PgID 644–45.[2]

Gilmore alleges that trial counsel's failure to listen to the recording before trial left him without a defense to the evidence.  He also contends that, if trial counsel had investigated the recording before trial, she may have been able to challenge and suppress the evidence.  But he has not suggested any legal basis that trial counsel could have used to challenge and suppress the evidence.

Furthermore, trial counsel apparently was aware of the recording and its content before trial because she mentioned it in her opening statement.  *See id.* at p. 165, PgID 614).  To her credit, she informed the jury that "a motive, without more, means nothing."  *Id*. at p. 164, PgID 613.  She then explained that motive was not an element of any of the charged offenses, and she stated that the evidence did not show that Gilmore had anything to do with the crimes.  *Id*. at p. 165, PgID 614.

The trial court also instructed the jury on motive, stating:

> You may consider whether the defendant had a reason to commit the alleged crime, but a reason by itself is not enough to find a person guilty of a crime.  The prosecutor does not have to prove that the defendant had a reason to commit the alleged crime.  She only has to show that the defendant actually committed the crime and that he meant to do so.

---

[2] The contents of the phone call were not transcribed as part of the transcript of trial.

8/22/13 Trial Tr. at pp. 15–16 (ECF No. 10-19, PgID 1021–22).

Moreover, the recording that was played for the jury was garbled and difficult to understand.  *See* 8/19/13 Trial Tr. at pp. 191–92 (ECF No. 10-16, PgID 640–41).  And Graham had already testified about Gilmore threatening him on the phone from jail due to their disagreement over a security deposit.  *Id*. at pp. 184–86, PgID 633–35.

For the reasons given in the preceding paragraphs, Gilmore has failed to establish that trial counsel's alleged failure to listen to the disputed recording before trial prejudiced his defense.  And because the state court's rejection of his claim on that basis was objectively reasonable, his claim fails.

### c.  Making an Unfulfilled Promise

Gilmore's final claim about trial counsel is that, although counsel stated during her opening statement that she would be producing two witnesses, *see id.* at pp. 157–58, PgID 606–07, she failed to keep her promise to produce the witnesses.  The two witnesses were Officers Passalacqua and Mason.  Gilmore argues that the broken promise created a negative inference that the witnesses were unwilling to testify and help the defense.  Gilmore also argues that the false promise undermined trial counsel's credibility.

It is true that a defense attorney's unfulfilled promise to produce a witness can create a negative inference against the defendant generally.  *English v. Romanowski*,

26

602 F.3d 714, 729 (6th Cir. 2010). "As the First Circuit has noted, 'little is more damaging than to fail to produce important evidence that had been promised in an opening.'" *Id.* (quoting *Anderson v. Butler,* 858 F.2d 16, 17 (1st Cir. 1988)). Such unfulfilled promises can cause a jury to wonder what happened to the promised witness and to use the unfulfilled promise against the defendant and his attorney. *See id.* (citing *United States ex rel. Hampton v. Leibach*, 347 F.3d 219, 259 (7th Cir. 2003)).

Nevertheless, as previously noted, Passalacqua's testimony from Gilmore's first trial was read into the record at his second trial. So, in that sense, trial counsel kept her promise to produce Passalacqua as a witness.

Furthermore, there was no prejudice to Gilmore because the trial court instructed the jurors to treat the reenacted testimony the same as the live testimony that they had heard. *See* 8/22/13 Trial Tr. at p. 16 (ECF No. 10-19, PgID 1022). And Passalacqua's testimony—that the complainants did not identify Gilmore when Passalacqua questioned them—aided Gilmore's defense that he was misidentified as a suspect.

Trial counsel's failure to produce Mason also did not prejudice Gilmore because the two officers prepared a joint report, and trial counsel conceded that Mason was "only potentially significant" for that reason. *See* 8/21/13 Trial Tr. at p.

74 (ECF No. 10-18, PgID 922).  Gilmore's claim about trial counsel's allegedly unfulfilled promise to produce Passalacqua and Mason lacks merit.

## C.  Appellate Counsel

The third habeas claim alleges that Gilmore was denied his right to effective assistance of appellate counsel.  Gilmore contends that appellate counsel failed to raise meritorious issues about trial counsel and should have requested an evidentiary hearing on those claims.  According to Gilmore, his claims about trial counsel were stronger than the claims his appellate attorney raised.

Petitioner first raised his claim about appellate counsel in his motion for relief from judgment.  The trial court held that appellate counsel was not ineffective because the issues that Petitioner sought to argue were found to be non-prejudicial on appeal.

The proper standard for evaluating a claim about appellate counsel is the standard enunciated in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000).  To prevail on his claim, Petitioner must demonstrate (1) that appellate counsel acted unreasonably in failing to discover and raise non-frivolous issues on appeal, and (2) there is a reasonable probability that he would have prevailed on appeal if his attorney had raised all his claims.  *Id*. (citing *Strickland,* 466 U.S. at 687–91, 694); *see also Pollini v. Robey*, 981 F.3d 486, 493 (6th Cir. 2020) (stating that, "to prevail on a *Strickland*-based ineffective assistance of appellate counsel claim, [the habeas

petitioner] must satisfy two prongs: (1) that his appellate counsel was deficient, and (2) that the deficiency prejudiced him"), *cert. denied*, 141 S. Ct. 2832 (2021).

Gilmore himself raised the two claims about trial counsel's failure to (i) interview and subpoena Officers Passalacqua and Mason, and (ii) review the recording of the phone conversation between Gilmore and Graham. Because the Michigan Court of Appeals discussed and rejected both of those claims on the merits, there is not a reasonable probability that Gilmore would have prevailed on appeal if his attorney had raised the issues. Appellate counsel's performance did not prejudice Gilmore.

Gilmore's third claim about trial counsel was not raised by either Gilmore or his appellate attorney on direct appeal. But, as previously explained, the contention that trial counsel made an unfulfilled promise to produce Officers Passalacqua and Mason at trial lacks merit. Passalacqua's testimony from Gilmore's first trial was read into the record and that testimony supported Gilmore's defense that the complainants did not identify him to Passalacqua at the crime scene.

When, as here, "trial counsel performed adequately, [the Court's] inquiry is at an end; by definition, appellate counsel cannot be ineffective for a failure to raise an issue that lacks merit." *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001). Additionally, the state trial court's rejection of Gilmore's claim about appellate

29

counsel was objectively reasonable.  Gilmore, therefore, has no right to habeas relief on his third claim.

## D.  Denial of a Continuance

Gilmore's final claim alleges that the trial court abused its discretion and violated his rights to compulsory process and due process by denying trial counsel's request to adjourn the trial for a day so that she could serve subpoenas on Officers Passalacqua and Mason.  *See* 8/21/13 Trial Tr. at pp. 57–58 (ECF No. 10-18, PgID 905–06).  The Michigan Court of Appeals adjudicated this claim on the merits during the direct appeal, and it held that the trial court did not abuse its discretion in denying Gilmore's request for an adjournment.

### 1.  Clearly Established Federal Law

"The matter of continuance is traditionally within the discretion of the trial judge," and not every denial of a request for more time violates due process.  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  "The denial of a continuance constitutes a constitutional violation only when there is an unreasoning and arbitrary insistence upon expeditiousness in the face of a justifiable request for delay."  *Landrum v. Mitchell*, 625 F.3d 905, 927 (6th Cir. 2010) (quotations marks and end citations omitted).

Whether the denial of a continuance is so arbitrary as to violate due process depends on the circumstances, "particularly in the reasons presented to the trial judge

at the time the request is denied." *Ungar*, 376 U.S. at 589; *see also Forensic v. Birkett*, 501 F.3d 469, 479 (6th Cir. 2007) (noting that "the governing federal law relating to continuances is a broad, totality-of-the-circumstances standard" and that "[t]he state courts must at the very least consider the relevant circumstances").

> In addition, "[t]o demonstrate reversible error, the defendant must show that the denial resulted in actual prejudice to his defense." *United States v. King,* 127 F.3d 483, 487 (6th Cir.1997) (internal quotation marks and citation omitted). "Actual prejudice may be demonstrated by showing that additional time would have made relevant witnesses available or otherwise benefited the defense." *Powell [v. Collins,* 332 F.3d 376, 396 (6th Cir. 2003)].

*Landrum*, 625 F.3d at 927–28.

> The relevant factors in determining whether a continuance was properly denied include:  (1) the length of the requested delay; (2) whether other continuances had been requested and granted; (3) whether the delay was for legitimate reasons; (4) the inconvenience to the parties, witnesses, counsel, and the court; (5) whether the defendant contributed to the circumstances giving rise to the request; (6) whether denying the continuance resulted in prejudice to the defendant; and (7) the complexity of the case.

*Id*. at 928.

As for the right to have compulsory process for obtaining witnesses, the right is guaranteed to an accused by the Sixth Amendment, which is applicable to state criminal trials.  *See Washington v. Texas*, 388 U.S. 14, 17–19 (1967).

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies.  Just as an accused has the right to confront the prosecution's witnesses for the

purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense. This right is a fundamental element of due process of law.

*Id*. at 19. The right is violated if the State arbitrarily denies the accused "the right to put on the stand a witness who was physically and mentally capable of testifying to events that he had personally observed, and whose testimony would have been relevant and material to the defense." *Id.* at 23.

## 2. Application of the Law

Gilmore's case was not complex, and the length of the requested delay was relatively short: just one day. Gilmore did not request other adjournments during the trial, and he had a legitimate reason for his request: he wanted to serve subpoenas on Officers Passalacqua and Mason so that he could produce them at trial and use their testimony to impeach the complainants' testimony that they had identified him to the officers at the crime scene. *See* 8/21/13 Trial Tr. at p. 73 (ECF No. 10-18, PgID 921). These factors weigh in Gilmore's favor.

Gilmore, however, made his request for an adjournment on the third day of trial, and an adjournment, no doubt, would have inconvenienced the prosecution, the jury, and the trial court. It is unlikely that Gilmore could have made the officers available with additional time, because the officer in charge of the case had already tried for a day or two to get the officers to sign subpoenas for their appearance.

Furthermore, Gilmore contributed to the circumstances giving rise to his request for a continuance.  He did not subpoena Passalacqua or Mason as witnesses before trial even though the prosecutor did not include the officers' names on her witness list, which she filed more than a year before trial.  *See id*. at p. 77, PgID 925. Additionally, two weeks before trial, the trial court granted Gilmore's request for a different attorney, *see Gilmore*, 2015 WL 558292, at *1, and Gilmore's trial attorney acknowledged at trial that she had received the former attorney's file, which included discovery materials.  *See* 8/21/13 Trial Tr. at 70–71 (ECF No. 10-18, PgID 918–19).  From the day that trial counsel was appointed until the day before trial, she never advised the trial court that she was having trouble subpoenaing witnesses. *See id.* at 66–70, PgID 914–18.

Finally, the denial of a continuance did not prejudice Gilmore's right to present a defense because Officer Passalacqua's testimony from the first trial was read into the record, and trial counsel conceded that, generally, there was nothing more to ask Passalacqua.  *Id*. at p. 76, PgID 924.  As for Officer Mason, her testimony likely would have been cumulative because she did not write a separate police report.  *See id*. at p. 74, PgID 922.

The Michigan Court of Appeals concluded that there was not "good cause" to adjourn the trial and that Gilmore was not prejudiced by the lack of an adjournment. Because this conclusion was objectively reasonable and neither contrary to, nor an

33

unreasonable application of, Supreme Court precedent, Gilmore has no right to relief on his due process and compulsory-process claims.

## IV. Conclusion and Order

For the reasons given above, Gilmore's first claim (prosecutorial misconduct) is procedurally defaulted, and his third subclaim about trial counsel lacks merit because he has not shown that trial counsel's alleged failure to keep a promise to produce witnesses prejudiced him. The state courts' adjudications of Gilmore's remaining claims were not contrary to Supreme Court precedent, an unreasonable application of Supreme Court precedent, or based on unreasonable determinations of the facts. The Court, therefore, denies the habeas corpus petition.

The Court also declines to issue a certificate of appealability. Gilmore has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), and reasonable jurists could not disagree with the Court's resolution of his constitutional claims, nor conclude that the issues deserve encouragement to proceed further. *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). Nevertheless, because Gilmore was granted permission to proceed in forma pauperis in this Court, *see* ECF No. 3, he may appeal this decision *in forma pauperis* without further authorization from the Court, as an appeal could be taken in good faith. 28 U.S.C.

34

§ 1915(a)(3); Fed. R. App. P. 24(a)(3)(A).

**IT IS SO ORDERED.**

s/Paul D. Borman
PAUL D. BORMAN
United States District Judge

Dated: June 3, 2022